**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

UNITED STATES OF AMERICA

v.                                                                      CRIMINAL  ACTION  NO. 3:11-00011

DAVID MICHAEL PERSONS

**MEMORANDUM OPINION AND ORDER**

Pending is the defendant David Michael Persons's Motion to Suppress Evidence [Doc.

19] and Motion for Favorable Evidence. [Doc. 18]

**I.      Background**

On February 4, 2011, the defendant was charged in a four-count indictment for distribution

of heroin and cocaine on various dates, and the possession with the intent to distribute a quantity of

heroin.  These charges arose out of an investigation conducted by the West Virginia State Police

Bureau of Criminal Investigations ("BCI") beginning over one year ago.

In February of 2010, Sargent D.O. Lucas of the BCI began maintaining continuous contact

with an informant (hereinafter, "Jim")[1] who had previously advised that he could make controlled

narcotics purchases from the defendant.  On March 1, 2010, Officer Lucas met with Jim in order to

arrange a controlled purchase from the defendant at his residence in West Columbia, Mason County,

West Virginia.   Before the purchase commenced, investigators observed a vehicle bearing a

---

[1] The BCI also used another informant (hereinafter, "John") who traditionally
accompanied Jim on various controlled buys.  Jim, however, was the primary informant, and
conducted each transaction.

Wisconsin registration plate parked at the defendant's residence. Upon arriving at the residence, Jim learned from the defendant that he had just sold his last quantity of heroin to a friend from Wisconsin.

On March 3, 2010, the BCI again attempted to use Jim in a controlled sale. This time, Jim purchased $200.00 worth of heroin from the defendant at his residence. This transaction was recorded both in audio and video form. Subsequently, on March 15, 2010, Jim made a recorded telephone call to the defendant in an effort to purchase more heroin, and was told that he could obtain it later in the day. Later that evening, at the direction of the BCI, Jim purchased approximately 1 gram of heroin from the defendant at his residence. This transaction was again captured on audio and video recording. Finally, on March 31, 2010, the BCI used Jim to make a controlled purchase of approximately .82 grams of cocaine from the defendant after the two had previously spoken about the transaction.

In each of the these instances, the Government alleges that the West Virginia State Police Forensic Laboratory confirmed the purchased substances as heroin or cocaine. Citing the above facts, Officer Lucas applied for an anticipatory search warrant from Mason County Circuit Judge David Nibert on April 15, 2010. Officer Lucas's affidavit alleged that, earlier in the day, the defendant had left a message for Jim representing that he would have heroin for sale on the same evening as his supplier in Huntington, West Virginia was obtaining a quantity of the drug that day. It further stated that the defendant had instructed Jim to call him in the evening in order to arrange a potential purchase. The affidavit suggested that the defendant would have possession of heroin when he made a return phone call to Jim stating as much. Judge Nibert issued the warrant on April 15, 2010. *See* Mot. to Suppress Evidence Ex. A, at 14, No. 19-1.

Jim did not receive the call from the defendant on April 15th. Instead, Jim initiated a call with the defendant to arrange the planned purchase, and the defendant advised him that he was having trouble with his source and would not likely have any heroin available that night.

On April 20, 2010, Jim again called the defendant to inquire about the status of his supply. This time, the defendant stated that he would have heroin available later in the day after he could secure enough buyers to justify a trip to his source. Jim provided the defendant with $200.00 of recorded currency to take with him to Huntington for a purchase. Later, the defendant called Jim to report that he had obtained the heroin, and upon receiving the call, investigators executed the warrant, seizing a quantity of heroin and two firearms from the defendant's residence.

## II.    Discussion

The defendant has submitted two motions concerning the BCI's interaction with the cooperating informants in this case. First, he contends that the anticipatory warrant issued by Judge Nibert on April 15, 2010 was legally invalid because it was not executed on the 15th, and was based upon probable cause that effectively dissipated when the defendant advised Jim that he did not have heroin available on that date. Second, he has requested that the Court issue an order mandating that the government turn over various documents detailing information on the informants so that he may present an entrapment defense and properly subject the Government's witnesses to adequate cross-examination. The Court addresses both motions in turn.

### A.    Search Warrant

"An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time . . . certain evidence of crime will be located at a specified place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (quotation omitted). The execution of most anticipatory warrants

is subject to the occurrence of a "triggering condition," which serves as the bridging nexus to establish probable cause. *Id.* at 94. The defendant's first argument concerns language on the face of the search warrant at issue in this case which states, "[y]ou are . . . to search forthwith the premises above described . . . ." *See* Mot. to Suppress Evidence Ex. A, at 1, No. 19-1. The defendant contends that the command to execute the warrant "forthwith" means that the warrant had to be executed on the date of its issuance—April 15, 2010—and not a few days later.

Despite some confusion in the briefing, the Court construes the defendant not to argue that probable cause was lacking for the actual search, but that the warrant issued was no longer valid as a matter of law.[2] Probable cause to conduct the ultimate search on April 20th surely existed. The defendant was the subject of a long-term investigation involving narcotic sales and he had spoken via telephone with the BCI's informant on numerous occasions in order to sell heroin and cocaine. He made a similar call on the 20th after a return from his supply source in Huntington, and the BCI rightfully determined that he was in possession of a quantity of heroin which he intended to distribute. Nonetheless, even though there may have been probable cause to search the defendant's home on April 20th, absent limited exceptions, any "entry into a home to conduct a search . . . is unreasonable under the Fourth Amendment unless done pursuant to a [valid] warrant." *Steagald v. United States*, 451 U.S. 204, 211 (1981). Thus, inasmuch as the government does not contend that an exception to the warrant requirement applies in this case, the question is whether the warrant issued on April 15th could have legally been executed on the 20th.

The "triggering event" in the warrant at issue here states the following:

---

[2] Of course, if this is the case, the evidence was seized in violation of the Fourth Amendment, and must be suppressed under the exclusionary rule. *See United States v. Calandra*, 414 U.S. 338, 347-48 (1974).

> This search warrant, if issued will be executed pursuant to CI "Jim"
> receiving a phone call from [the defendant] advising that he has drugs
> for sale at his residence at that time.

Mot. to Suppress Evidence Ex. A, at 14, No. 19-1.  As already noted, the warrant also states that Jim

called the defendant to arrange a purchase of heroin on April 15, 2010.  The defendant told Jim to

"phone him in the evening as he would have heroin for sale at his residence *on this date*."  *Id.*

(emphasis added). Later, however, the defendant advised Jim that he was having trouble with his

source, and would not have any heroin available that night.  Therefore, the warrant was not executed

on the 15th.  Subsequently, on April 20th, Jim again called the defendant, and the defendant promised

that he would have heroin available that day.  Later, the defendant called Jim to report that he finally

had possession of the drugs, and it was upon receiving this call that investigators executed the

warrant.

On balance, the Court does not read the warrant's language as mandating that the triggering

condition had to occur on the same day the warrant was issued.  That is, nowhere does it say that Jim

had to receive the call from the defendant on the 15th.  Rather, it states only that the warrant would

be executed when Jim ultimately received a call from the defendant advising that he had drugs for

sale "*at that time*"—i.e., at the time the call was made.  The paragraph preceding the triggering

condition language suggests that the defendant would likely have heroin on April 15th because his

supplier would obtain a quantity of the drug that night.  While this fact affects the underlying

probable cause determination—discussed in more detail below—that the defendant would be in

possession of heroin when the call occurred, it does not mean that he would necessarily make that

call to Jim on the same date.

Nor does the standard boilerplate "forthwith" language change the Court's conclusion.

"Forthwith" literally means "immediately."  RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY

516 (2000). But a warrant can be executed immediately within the context of the circumstances

surrounding its issuance.   It need not always be executed on the date it is issued.  The Court reads

the "forthwith" language on the warrant's face to require that it be executed without delay upon

occurrence of the triggering condition set forth by Officer Lucas's accompanying affidavit—namely,

when Jim received the call from the defendant.[3]

The investigation of the defendant involved numerous controlled buys.  Not all of those buys

were immediately successful, but the defendant frequently kept Jim informed of his supply over the

telephone.  It is not unreasonable to assume that Officer Lucas applied for the anticipatory warrant

under the assumption that the defendant would make the necessary call advising that he had obtained

a quantity of heroin on the 15th or a few days later because this pattern of conduct was consistent

with his prior sales.

### 1.    Probable Cause

"[W]here an anticipatory warrant is conditioned on a triggering event, the probable cause

determination is two-fold: 'It must be true not only that *if* the triggering condition occurs there is a

fair probability that contraband or evidence of a crime will be found in a particular place, but also

that there is probable cause to believe the triggering condition *will occur*.'" *United States v.*

*Andrews*, 577 F.3d 231, 237 (4th Cir. 2009) (quoting *Grubbs*, 547 U.S. at 96-97 (internal citations

and quotation marks omitted; emphasis in original)).  As partially alluded to in Section A, the facts

here adequately establish probable cause as to both the underlying crime and the triggering

---

[3] As explained more fully *infra*, West Virginia law explicitly permits the execution of
warrants within ten days of their issuance.  *See* W. Va. Code § 62-1A-4.

condition.

First, this search was the culmination of a nearly three-month investigation of the defendant. The BCI conducted numerous controlled buys using the informants. At these buys, the defendant had routinely accepted hundreds of dollars of recorded U.S. Currency in exchange for heroin and cocaine. Many of the buys were captured on clear audio and video. It was reasonable for the circuit judge to conclude that the defendant would have possession of heroin and other narcotics after he visited his supplier in Huntington, and called to complete another sale to Jim.

Second, there was probable cause to believe that the call would actually occur within the statutory time frame. Section 62-1A-4 of the West Virginia Code provides that a warrant may be executed and returned within ten days after the date of its issuance. This requirement is apparent on page one of the warrant in this case. Mot. to Suppress Evidence Ex. A, at 1, No. 19-1. Officer Lucas's affidavit in support provided a detailed background about the ongoing nature of the investigation of the defendant, and the conduct surrounding many of his prior sales to Jim. The defendant represented that he would likely have heroin available on April 15th as his Huntington source would have a supply that evening. Consequently, Officer Lucas may have personally believed that the triggering phone call was going to occur on the 15th of April, but the Court agrees with the Government that he understood that the warrant could be executed a few days later consistent with the practice surrounding Jim's previous controlled buys. That is, the defendant—on the 15th or a few days later—would inform Jim that he had possession of heroin that he had obtained from his Huntington supplier.

### 2.    Staleness

An obvious related issue concerns whether the warrant became stale. The defendant

intimates that the probable cause upon which the warrant was based dissipated when he called Jim

on April 15th to advise that he had *not yet* obtained heroin from his supplier.  The Fourth Amendment

requires a search to be "confined in scope to particularly described evidence relating to a specific

crime for which there is probable cause."  *United States v. Oloyede*, 982 F.2d 133, 138 (4th Cir.

1992).  Stale warrants arise where (1) the facts alleged in a warrant established probable cause when

it was issued, but the delay in executing the warrant tainted the search; or (2) the information upon

which the warrant rests is too old to furnish "present" probable cause.  *United States v. Lasdulce*,

No. 05-5010, 2007 U.S. App. LEXIS 16532, at *4-5 (4th Cir. July 11, 2007) (citation omitted).

The BCI began conducting controlled buys with the defendant roughly three months before

the warrant was issued.  "[O]ngoing and continuous [criminal] activity makes the passage of time

less critical."  *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990).  The informants' drug

transactions with the defendant in the past were conducted in a manner similar to the triggering

condition's factual predicate.  It was not always the case that the defendant had drugs available

immediately.  The defendant, however, maintained a close and continuous relationship with Jim, and

as noted, the two would routinely connect over the phone within a short period of time after the

defendant had obtained drugs from his supplier.

Further, Jim's contact with the defendant on April 15th did not terminate underlying proposed

transaction that was scheduled to occur after the defendant had obtained a supply of heroin from his

Huntington source's newly replenished narcotics stock.  All the defendant told Jim on the 15th was

that he was "having problems obtaining heroin" on that date.  Mot. to Suppress Evidence Ex. B, at

2, No. 19-2 (police report). He neither said nor implied that he would discontinue his attempts to

obtain heroin for Jim—just that any drugs would not necessarily be forthcoming on the 15th.  It is

for that reason that the warrant in this case was properly executed within the ten-day statutory time frame set forth under § 62-1A-4.  The four-day delay in execution did not dissipate the existing probable cause. The judge could have reasonably concluded that there was a fair probability that evidence of illegal drug distribution would be found at the defendant's residence at the time the defendant's call occurred, and likewise that the call would in fact occur on the day the warrant was issued, or within a next few days thereafter.

### B.      Motion for Favorable Evidence

The defendant also seeks additional discovery from the Government.  Specifically, he claims that the Government should turn over records detailing the phone numbers that Jim used to contact the defendant, and other information on the precise details of the relationship between the Government and the informants.  In that regard, he has created an itemized list of requests that he deems will assist him in challenging the sufficiency of the Government's evidence, and in preparing an entrapment defense.

On March 17, 2011, the Government submitted a response in which it agrees that it will make supplemental disclosures addressing many of issues raised in the defendant's motion.[4] However, it  argues that the Court should deny the defendant's request for the informants' juvenile criminal history records and medical records because obtaining those documents would be overly burdensome and unlikely probative.  It also contends that the Court should deny the defendant's request for the documents detailing Jim's telephone numbers because they are of no persuasive value.

---

[4] The response otherwise provides adequate explanations that much of the evidence requested by the defendant either does not exist or has already been disclosed.

First, the Court agrees with the Government that it need not obtain and disclose the informants' juvenile criminal records.  The Government has no reason to believe that either informant has any juvenile convictions.  It has further provided all records detailing the informants' adult charges and convictions within its possession, including information concerning a charge brought against Jim in Jackson County, West Virginia which led to a leniency arrangement for his participation as an informant in the investigation of the defendant.  The Court also agrees that the defendant's request for the informants' medical records lacks a clear factual basis.  The defendant has failed to offer a good faith assertion that such records exist, or that they would be pertinent to either informants' competency to testify.  For these reasons, the Court **DENIES** the defendant's motion **WITHOUT PREJUDICE** as to his request for the informants' medical and juvenile conviction records.  There is no indication that such records exist, and the Government has met its burden in showing that it does not possess them.

Finally, consistent with the bench ruling issued on April 4, 2011, the Court **FINDS** that the defendant is entitled to information on Jim's telephone numbers in the manner requested.  The defendant is entitled to this information so that he may obtain any underlying telephone records in order to ascertain whether there were numerous unrecorded phone calls that Jim made to the defendant.  While the Government may be correct that these documents will not assist the defendant in presenting a meritorious entrapment defense, this issue presents a question for trial, not discovery. The Court **GRANTS** the motion, and **ORDERS** the United States to turn over to the defendant records detailing Jim's telephone numbers that were pertinent to the BCI's investigation.

## III.    Conclusion

For the foregoing reasons, the Court **DENIES** the defendant's motion to suppress evidence

[Doc. 19], and **GRANTS** in part and **DENIES WITHOUT PREJUDICE** in part his motion for

favorable evidence. [Doc. 18]

     The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel

of record and any unrepresented parties.

          ENTER:       April 6, 2011

          ROBERT C. CHAMBERS
          UNITED STATES DISTRICT JUDGE